1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

PACIFIC ENTERPRISES, LLC,

                Plaintiff(s),

    v.

AMCO INSURANCE COMPANY, et al.,

                Defendant(s).

Case No. 2:14-CV-1757 JCM (VCF)

ORDER

Presently before the court is defendant AMCO Insurance Company's (hereinafter "AMCO") motion for summary judgment. (Doc. # 19). Plaintiff Pacific Enterprises I, LLC (hereinafter "plaintiff") filed a response, (doc. # 23), and AMCO filed a reply, (doc. # 24).

Also before the court is AMCO's request for judicial notice.

I.      **Background**

This is an insurance dispute arising out of theft and property damage committed by plaintiff's tenant, Quality Hotel Furniture Sales ("QHFS"). Plaintiff is a Nevada corporation that owns several warehouses in downtown Las Vegas, including certain real property located at 813 N. Main St., Las Vegas, NV 89101 ("the property"). (Doc. # 1-1).

At the relevant time, plaintiff was insured under a business owners' policy issued by AMCO, an Iowa company. (Doc. # 20-3). Plaintiff also possessed an insurance policy with Travelers Casualty Insurance Company of America ("Travelers"), a Connecticut corporation. (Doc. # 1-1).

Plaintiff entered into a one-year commercial lease for the property with QHFS on February 1, 2012, to continue through January 31, 2013. After a few months, QHFS defaulted on its rent

**James C. Mahan**
**U.S. District Judge**

1   payments and plaintiff commenced eviction proceedings.  QHFS then filed for bankruptcy and

2   refused to vacate the property for almost six months.  On or about November 7, 2012, QHFS was

3   evicted from the property.  (Doc. # 1-1).

4       Upon reentry onto the premises, plaintiff discovered that QHFS had stripped copper wiring

5   and removed copper coolant pipes, causing damage to the property.  QHFS had also left

6   approximately 20 tons of broken furniture in the warehouse.  Plaintiff then submitted a claim to

7   AMCO for losses resulting from QHFS's conduct.  AMCO denied the claims on the grounds that

8   they were excluded under the policy.  (Doc. # 1-1).

9       The policy at issue contains the following relevant exclusions:

10

11      *2. We will not pay for loss or damage caused by or resulting from any of the following:*

12      . . .

13      *f. Dishonesty*

        *Dishonest or criminal acts by you, anyone else with an interest in the property,*
14      *. . . or anyone to whom you entrust the property for any purpose . . . .*

15      *g. False Pretense*

16      *Voluntarily parting with any property by you or anyone else to whom you have*
        *entrusted the property if induced to do so by any fraudulent scheme, trick, device*
17      *or false pretense.*

18   (Doc. # 19).

19      On August 7, 2014, plaintiff filed suit in Nevada state court against AMCO, Travelers, and

20   various Doe defendants, alleging breach of contract, breach of the implied covenant of good faith

21   and fair dealing, unjust enrichment, and violations of the Unfair Claims Practices Act.  (Doc. # 1-

22   1).

23      On October 23, 2014, Travelers removed the case to this court.  (Doc. # 1).  On November

24   6, 2014, AMCO filed a notice of consent to removal.  (Doc. # 7).  On the same date, AMCO filed

25   an answer to plaintiff's complaint.  (Doc. # 8).

26      On October 29, 2014, Travelers filed a motion to dismiss the claims against it.  (Doc. # 4).

27   Plaintiff filed a response, (doc. # 11), and Travelers filed a reply, (doc. # 13).  On January 5, 2015,

28

**James C. Mahan**
**U.S. District Judge**

                                        - 2 -

1   the court granted the motion and dismissed Travelers from the case.  (Doc. # 16).  AMCO then

2   filed the instant motion.  (Doc. # 19).

3   **II.     Legal Standard**

4   *A.     Judicial notice*

5   Federal Rule of Evidence 201 provides for judicial notice of adjudicative facts.  Under Rule

6   201(b)(2), the court may "judicially notice a fact that is not subject to reasonable dispute because

7   it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably

8   be questioned.  Fed. R. Evid. 201(b)(2).

9   Rule 201(c)(2) states that the court "must take judicial notice if a party requests it and the

10  court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  The court may take

11  judicial notice of public records if the facts noticed are not subject to reasonable dispute.  *See*

12  *United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011); *see also Intri-Plex Tech.,*

13  *Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citations and quotation marks

14  omitted).

15  *B.     Summary judgment*

16  The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

17  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

18  show that "there is no genuine dispute as to any material fact and the movant is entitled to a

19  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

20  "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

21  323-24 (1986).

22  For purposes of summary judgment, disputed factual issues should be construed in favor

23  of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

24  entitled to a denial of summary judgment, the non-moving party must "set forth specific facts

25  showing that there is a genuine issue for trial."  *Id.*

26  In determining summary judgment, a court applies a burden-shifting analysis.  "When the

27  party moving for summary judgment would bear the burden of proof at trial, it must come forward

28  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at

**James C. Mahan**
**U.S. District Judge**

trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

C.    *Federal Rule of Civil Procedure 56(d)*

Federal Rule of Civil Procedure 56(d) states that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d)(2).

"The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

James C. Mahan
U.S. District Judge

- 4 -

### III.   Discussion

*A.   Judicial notice*

In support of its motion for summary judgment, AMCO filed a request for judicial notice. (Doc. # 21).  AMCO asks the court to take judicial notice of three documents: (1) the assessor's real property parcel record for the property at issue; (2) the Nevada Secretary of State's business entity page for plaintiff; and (3) the Nevada Secretary of State's business entity page for QHFS. (Doc. # 21).

Plaintiff has not responded to or opposed AMCO's request for judicial notice.   The documents at issue are matters of public record, and the court finds that they are not subject to reasonable dispute.  Accordingly, AMCO's request for judicial notice will be granted.

*B.   Summary judgment*

Plaintiff's complaint asserts four causes of action against AMCO.  (Doc. # 1-1).  AMCO moves for summary judgment on all of the claims against it.  (Doc. # 19).  The court will address the merits of each cause of action in turn.

*i.   Breach of contract*

Plaintiff alleges that AMCO breached the insurance contract at issue by failing to pay plaintiff's benefits under the policy.  (Doc. # 1-1).  AMCO moves for summary judgment on the grounds that the conduct at issue is excluded under the policy's dishonesty and false pretenses exclusions.  (Doc. # 19).

*a.   Insurance policy interpretation*

Under Nevada law, courts interpret unambiguous insurance provisions "according to the plain and ordinary meaning of [their] terms."  *Powell v. Liberty Mutual Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).  "A provision in an insurance policy is ambiguous if it is reasonably susceptible to more than one interpretation."  *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011) (internal quotation marks omitted).  "[A]ny ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured."  *Id.*; *see also Farmers Ins. Exch. v. Young*, 832 P.2d 376, 377 (Nev. 1992).

James C. Mahan
U.S. District Judge

1       Plaintiff argues that its insurance contract with AMCO must be construed in its favor.

2    However, this rule does not apply unless the provisions at issue are ambiguous. Plaintiff fails to

3    show that the dishonesty and false pretenses exclusions are susceptible to multiple meanings.

4    Instead, plaintiff attempts to read additional restrictions into the exclusions that are not supported

5    by the plain language of the policy.

6       Other courts have held similar policy exclusions to be unambiguous. *See Cerplex, Inc. v.*

7    *Chubb Group of Ins. Co.*, 7 Fed. App'x 800, 801 (9th Cir. 2001) (affirming district court holding

8    that plain language of dishonesty exclusion barred coverage); *Su v. New Century Ins. Servs., Inc.*,

9    No. CV 12-03894 DDP (SSx), 2013 WL 5775160, at *4 (C.D. Cal. Oct. 25, 2013); *Bainbridge v.*

10   *Calfarm Ins. Co.*, No. D042362, 2004 WL 2650892, at *6 (Cal. Ct. App. Nov. 22, 2014); *Atlas*

11   *Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 145 (1983).

12      Accordingly, the court need not construe the policy in favor of plaintiff. Instead, the court

13   will address the applicability of the exclusions, construing them based on their plain meaning.

14                 *b.   The dishonesty exclusion*

15      While the parties disagree over the applicability of the policy exclusions, they do not

16   dispute any material facts in this case. In its response to AMCO's motion for summary judgment,

17   plaintiff's "statement of disputed facts" consists solely of the following assertion: "Plaintiff

18   disputes that the Dishonesty Exclusion and False Pretense Exclusion preclude coverage in this

19   matter." (Doc. # 23).

20      AMCO contends that the dishonesty provision unambiguously excludes the damage at

21   issue from coverage. In support of this argument, AMCO explains that QHFS was entrusted with

22   the insured property and committed criminal acts in the form of theft. (Doc. # 19).

23      Plaintiff responds that the exclusion does not apply because QHFS was in breach of the

24   lease beginning in April 2012. On these grounds, plaintiff contends that QHFS had not been

25   properly entrusted with the property at the time of damage. (Doc. # 23).

26      In its reply, AMCO argues that the exclusion does not require the dishonest act to have

27   occurred during legal possession of the property. According to AMCO, the damage must simply

28

1  be "caused by or resulting from" the action of someone entrusted with the property during the

2  policy period.

3       The court agrees with AMCO, and is not persuaded by plaintiff's limited reading of the

4  dishonesty provision.  Plaintiff agreed to lease the property at issue to QHFS for a period of one

5  year, ending on January 31, 2013.  (Doc. # 23).  As lessee, QHFS had an interest in the property

6  at issue and was entrusted with it.  Plaintiff seeks to recover under its policy for damage resulting

7  from dishonest or criminal acts by its lessee.  The court finds that this damage is excluded based

8  on a reading of the plain language of the policy.

9       While Nevada courts have not explicitly addressed this issue, case law from numerous

10  jurisdictions supports the court's interpretation.  *See, e.g.*, *Plaza 61 v. North River Ins. Co.*, 446 F.

11  Supp. 1168, 1170-71 (M.D. Pa. 1978) (rejecting plaintiff insured's argument that exclusion was

12  inapplicable where contractor stole property after contractor was terminated and ordered to vacate

13  site); *Bita Trading, Inc. v. Nationwide Mutual Ins. Co.*, No. 13cv1548 JM (WVG), 2015 WL

14  433557, at *7 (S.D. Cal. Feb. 3, 2015) (finding entrustment exclusion barred claim for property

15  damage caused by lessee despite termination of tenancy); *Su v. New Century Ins. Servs., Inc.*, No.

16  CV 12-03894 DDP (SSx), 2013 WL 5775160, at *4 (C.D. Cal. Oct. 25, 2013) ("Even if the loss

17  occurs after the entrustment of the property has terminated, the exclusion still applies so long as

18  there is a causal connection between the act of entrustment and the resulting loss") (internal

19  quotation marks and citations omitted); *Bainbridge v. Calfarm Ins. Co.*, No. D042362, 2004 WL

20  2650892, at *6 (Cal. Ct. App. Nov. 22, 2014) ("Nothing in the language of the entrustment

21  exclusion requires that the wrongful act and the entrustment of property be contemporaneous.").

22       In support of its arguments, plaintiff cites and includes a District of Washington case,

23  *Nautilus Group, Inc. v. Allianz Global Risks US*, No. C11-5281BHS.  (Doc. # 23-1).  The *Nautilus*

24  court found that an ex-employee's theft from his employer after his termination was not covered

25  by a policy exclusion for "loss or damages directly or indirectly caused by or resulting from . . .

26  any dishonest act, including but not limited to theft . . . by the Insured or any . . . officer or employee

27  . . . ."  (Doc. # 23-1).

28

James C. Mahan
U.S. District Judge

- 7 -

1    As defendant argues, the facts of that case are distinguishable.  While the policy in *Nautilus*

2    included an exclusion for dishonesty and theft by the insured or any of its employees, this exclusion

3    did not cover entrustment.  By contrast, the policy exclusion at issue here prohibits recovery for

4    "damage caused by or resulting from . . . [d]ishonest or criminal acts by . . . anyone to whom [the

5    insured] entrust[ed] the property . . . ."  (Doc. # 19).

6    Accordingly, the court finds the above-cited cases dealing with entrustment to be

7    instructive.  *See, e.g.*, *Su v. New Century Ins. Servs., Inc.*, No. CV 12-03894 DDP (SSx), 2013 WL

8    5775160, at *4 (C.D. Cal. Oct. 25, 2013).  Moreover, the plain language of the policy exclusion at

9    issue does not support plaintiff's reading.  The court therefore finds that the dishonesty exclusion

10   covers plaintiff's damages, barring recovery.

11   Because the court finds that the damage at issue is unambiguously excluded under the

12   policy's dishonesty exclusion, the court need not also address the applicability of the false

13   pretenses exclusion.  The court will grant summary judgment in favor of AMCO on plaintiff's

14   breach of contract claim.

15                    ii.    *Breach of the implied covenant of good faith and fair dealing*

16   In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing

17   in its performance and execution."  *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev.

18   1989).  This implied covenant requires that parties "act in a manner that is faithful to the purpose

19   of the contract and the justified expectations of the other party."  *Morris v. Bank of Am. Nev.*, 886

20   P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).

21   In order to prevail on this claim against an insurance company, a plaintiff must

22   demonstrate: (1) the insurer denied or refused to pay the insured's claim; (2) without any reasonable

23   basis; and (3) the insurer had knowledge or awareness of the lack of any reasonable basis to deny

24   coverage, or the insurer acted with reckless disregard as to the unreasonableness of the denial.

25   *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996); *Schumacher v. State Farm Fire &*

26   *Cas.*, 467 F. Supp. 2d 1090, 1096 (D. Nev. 2006).

27   An insurer is not liable for bad faith so long as it had a reasonable basis to deny coverage.

28   *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1249 (D. Nev. 1994)

James C. Mahan
U.S. District Judge

(refusing to find bad faith where insurance company investigated damage and requested documents, despite insured's argument that investigation was incomplete).

As addressed above, plaintiff's breach of contract claim fails because the damage at issue is excluded under the policy. As a result, plaintiff's bad faith claim is not viable. Plaintiff cannot show bad faith where AMCO reasonably denied coverage. Accordingly, the court will grant summary judgment in favor of AMCO on plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### iii.    Unjust enrichment

"Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (internal quotation marks and citation omitted).

"An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997).

In the instant case, an express, written contract is at issue between the parties, making unjust enrichment unavailable as a cause of action. In its response to AMCO's motion to summary judgment, plaintiff states that it does not oppose the dismissal of this claim. Accordingly, defendant's motion for summary judgment will be granted as to this cause of action.

### iv.    Violations of the Unfair Claims Practices Act

While not addressed in the parties' briefing, plaintiff's complaint includes a fourth cause of action for violations of Nevada's Unfair Claims Practices Act. In particular, plaintiff contends that defendants violated Nevada Revised Statute 686A.310(1)(b)-(f). (Doc. # 1-1).

Nevada Revised Statute 686A.310(1) establishes that the following are unfair practices in settling claims:

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

1

2

(c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

3

4

(d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

5

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

6

7

(f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

8

Nev. Rev. Stat. 686A.310(1)(b)-(f).

9

10

As an initial matter, the court notes that plaintiff's allegations as to this cause of action are

11

conclusory. Plaintiff's complaint does not include any facts to support this claim. Moreover,

12

plaintiff fails to provide evidence showing a genuine dispute of material fact for this cause of

13

action. Plaintiff does not present any proof that AMCO acted in the manner specified by any of

14

the subsections above.

15

As the court has held, plaintiff cannot show that it was entitled to recover under the policy.

16

Accordingly, defendant cannot be liable for failing to effectuate a settlement or for compelling

17

plaintiff to institute litigation. *See* Nev. Rev. Stat. 686A.310(1)(e)-(f).

18

Further, plaintiff does not provide any support for its contention that AMCO's

19

communications with plaintiff, or its ultimate coverage decision, were delayed. *See* Nev. Rev.

20

Stat. 686A.310(1)(b), (d). Plaintiff also fails to produce any substantive evidence in support of its

21

allegations of delay regarding AMCO's investigation and processing of plaintiff's claims. *See*

22

Nev. Rev. Stat. 686A.310(1)(c).

23

Because the court finds no genuine issue of material fact on any of plaintiff's causes of

24

action, it will grant summary judgment to defendant on all four claims.

25

*C. Federal Rule of Civil Procedure 56(d)*

26

In its response to defendant's motion for summary judgment, plaintiff makes an alternative

27

request that the court allow more time for the parties to conduct discovery. (Doc. # 23). Defendant

28

James C. Mahan
U.S. District Judge

1   replies that the court should deny this request because additional discovery would not change the

2   outcome of the case.  (Doc. # 24).

3          The court agrees.  Pursuant to the analysis above, the court finds that plaintiff fails to raise

4   a genuine dispute of material fact.  The court has rejected plaintiff's confined reading of the

5   dishonesty exclusion, as it is not supported by the plain language of the policy.

6          Accordingly, further discovery regarding the timing of the damage would be futile.  For

7   these reasons, the court will deny plaintiff's request to deny the motion for summary judgment on

8   these grounds.  The motion will be granted in its entirety.

9   **IV.     Conclusion**

10          Accordingly,

11          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant AMCO

12   Insurance Company's request for judicial notice, (doc. # 21), be, and the same hereby is,

13   GRANTED.

14          IT IS FURTHER ORDERED that defendant AMCO's motion for summary judgment,

15   (doc. # 19), be, and the same hereby is, GRANTED.

16          The clerk shall enter judgment accordingly and close the case.

17          DATED April 23, 2015.

18

19          _____

20          UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**